### BOWDEN v. J. L. MOTT IRON WORKS (two cases).

(Supreme Court, Appellate Division, Second Department. June 8, 1906.)

MASTER AND SERVANT—NEGLIGENCE OF SERVANT—INJURY TO THIRD PERSON.
Evidence in an action for personal injury from the blowing over of a sign, caused by the removal of a barrel supporting it, *held* insufficient to warrant a finding that the person removing it was an employé of defendant, or, if so, that in so doing he was engaged in his master's work.

Appeal from Trial Term, Kings County.

Two actions—one by Clara M. Bowden, and the other by Charles H. Bowden—against the J. L. Mott Iron Works. From judgment for plaintiffs, and from orders denying motions for new trial, defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and HOOKER, RICH, MILLER, and GAYNOR, JJ.

John J. Gleason, for appellant.
Joseph H. Tuttle (Jeremiah J. Coughlan, on the brief), for respondents.

RICH, J. These actions were brought by a husband and wife, respectively, to recover damages for a personal injury sustained by the wife through the alleged negligence of the defendant, and the consequent damage to the husband resulting from the loss of services of his wife and expenses attendant upon her sickness. The actions were tried together, resulting in verdicts for the plaintiffs. Motions were made by the defendant to set the verdicts aside and for a new trial in each case, upon the exceptions, and because the verdicts were contrary to law and contrary to the evidence. From the judgments accordingly entered, and the orders denying said motions, these appeals were taken.

In February, 1901, a large number of independent contractors, having in their employ 100 or more workmen, were engaged in the erection of what is called the "Temple Bar Building," situate on the northwest corner of Court and Joralemon streets, in the borough of Brooklyn. Among said contractors were the firm of Shipman & Sons, who were doing the marble and mosaic work, and the defendant, who had the contract for the tile work in said building. A large wooden sign that had been used as an advertisement by a real estate agent, 10 feet wide and 6 feet high, stood on the morning of February 15th against the basement wall of the building in a position not causing any apprehension of danger to passers-by upon the streets. It partially covered one or more of the basement windows, in which basement the employés of Shipman & Sons were working, excluding the light therefrom. An employé of said firm ordered the sign moved that the workmen might have more light, and two marble cutters' helpers, in the employ of

Shipman & Sons, pushed the sign along the building towards Joralemon street, until it projected past the building into the street about 18 inches. There was a strong wind blowing, and they placed two barrels of sand against the bottom of the sign to prevent its being blown over. One of these men, Wang, testified that between 2 and 3 o'clock of that day he saw a "tiler's helper," whom he had heard called Duffy, take one of these barrels away, and is confident that after its removal there was no barrel left to support the sign. Who moved the other barrel, or what became of the contents of either, does not appear. Wang told him not to take the barrel away, and the helper replied: "That is my sand. I have got to use it." A short time after the barrels had been moved, the plaintiff, accompanied by a little boy three years old, was passing through Court street, and as she reached Joralemon street the wind blew this sign over, and in falling it struck her person, inflicting the injury complained of.

At the close of plaintiff's evidence the defendant moved to dismiss the complaints in both actions upon the ground "that there is no evidence of negligence on the part of the defendant or any of its servants or employés, and there is no proof that, even if the person mentioned was in the employment of the defendant, he was acting within the scope of his employment." The learned trial justice reserved his decision until all of the evidence was in. The defendant then called witnesses who gave evidence (uncontradicted) showing: First. That the sand used by its employés in the work done by them upon said building was never bought or delivered in barrels, but was taken to the building in carts or dirt trucks and dumped through coal holes in the sidewalk into the basement. Second. That no man by the name of Duffy was employed by the defendant on that building at any time during its construction. Third. That sand left out in uncovered barrels, at that season of the year, would be rendered unfit for use in defendant's business and could not be used or thawed out, so as to be fit for use. Fourth. That the tile setter or layer, working on the job on February 15th, was named Farley, and he had as helpers three men named Baker, Morrow, and Severen. (These helpers were called, and each testified that he did not move any barrel from in front of the sign on that day. Farley, the tile layer, was shown to be out of the state and was not produced.) Fifth. That it was no part of the tile layer's duty to move or take in barrels of sand. Sixth. That there was a man by the name of Duffy working upon the building off and on for about a year during its construction, who was helping the plasterers, but was in no manner connected with the tile layers. At the close of the evidence the defendant renewed its motion to dismiss the complaints, to which the trial justice replied:

"I will make the same disposition of it as on the previous motion; I will send the case to the jury."

The jury were charged that before they could find verdicts for the plaintiffs they must find that it had been established by a fair preponderance of the testimony that "one of the defendant's employés removed this supporting or retaining barrel from the front of this sign, and that he did it while engaged in his master's work."

I am convinced, after a careful consideration of the evidence, that the motions to dismiss the complaints should have been granted, upon the ground that it was insufficient to warrant the submission of the case to the jury, and that their finding that the person who moved the barrels was an employé of defendant and in so doing was engaged in his master's work is contrary to and against the weight of the evidence. The only testimony in the case connecting the defendant in any manner with the accident is that of Wang, and is very unsatisfactory. He is not able to identify or describe the person who he claims moved the barrels, except as a "tiler's helper" whom he had heard called Duffy. He only knows that he was a "tiler's helper," because he had seen him working in the building. The only description he can give of him is that he wore overalls, which were worn, as he says, by every workman in the building. He does not know how long this man had been working there, or in what part of the building he then was or theretofore had been working. The fact that there was sand in the barrels in no manner aids in the identification of the person who moved the barrels as an employé of the defendant; for, while its employés used sand in their work, sand was also used by the plasterers, the marble and mosaic layers (Shipman & Son's employés), and others. There is no proof that the sand in the barrels was the property of the defendant or was used by its employés. Nor does defendant's inability to produce Farley aid plaintiff's contention; for it was Duffy, a tiler's helper, and not Farley, a tile layer, who it is claimed moved the barrels. The evidence is so unsatisfactory and slight upon this crucial question, and is overcome to such an extent by the testimony produced by the defendant, as that a verdict based upon it cannot be permitted to stand.

If it were clearly established that the person moving the barrels was an employé of defendant, the case is barren of evidence showing or warranting the inference that in so doing he was engaged in his master's work, and a jury cannot be permitted to indulge in speculation in order to create a basis for their verdict. On the contrary, I think the evidence establishes that the master's work did not require or permit such act on the part of its employé. The defendant had procured sand on the morning of that day, that had been drawn to the building in dirt carts and shoveled through the holes in the sidewalk into the basement, where its employés were working, and no necessity is shown for a greater quantity of sand for use on that day than was thus delivered. The sand in the barrels, if it belonged to defendant, could not be used in its work, because of its frozen condition. Its employés were not, in the ordinary course of their business, in or near that part of the building where the barrels were. These facts destroy any inference arising from the only evidence given of the servant moving the barrels in the business of his master, viz., that the barrels contained sand, and the defendant used sand in the work its employés were engaged in. I think the evidence preponderates in defendant's favor to such an extent that we would not be warranted in sustaining the judgments.

The judgments and orders must be reversed, and new trials granted; costs to abide the event. All concur.